1  Chad D. Bernard (SBN 194162)
   Danielle C. Cepeda (SBN 327502)
2  JACKSON LEWIS P.C.
   725 South Figueroa Street, Suite 2500
3  Los Angeles, California 90017-5408
   Telephone: (213) 689-0404
4  Facsimile: (213) 689-0430
   Chad.Bernard@jacksonlewis.com
5  Danielle.Cepeda@jacksonlewis.com

6  Attorneys for Defendant
   XPO LOGISTICS FREIGHT, INC.
7

8  **UNITED STATES DISTRICT COURT**

9  **CENTRAL DISTRICT OF CALIFORNIA**

10

11 ERICK MARTINEZ,                              CASE NO.:

12              Plaintiff,

13       vs.                                    **NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441(a) AND (b) DIVERSITY**

14 XPO LOGISTICS FREIGHT, INC., a
   Delaware Corporation; and DOES 1 through
15 50, inclusive.

16              Defendants.                     [Filed concurrently with Declarations of Chad D. Bernard, Riina Tohvert, and Pablo Eguez; Notice of Interested Parties; Corporate Disclosure Statement; and Civil Case Cover Sheet]

17

18

19

20

21
                                                Complaint Filed: August 1, 2022
22

23       **TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT

24 COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

25       **PLEASE TAKE NOTICE** that Defendant XPO LOGISTICS FREIGHT, INC.

26 ("Defendant" or "XPO Logistics Freight, Inc.") hereby invokes this Court's jurisdiction

27 under the provisions of 28 U.S.C. §§ 1332, 1441(a) and 1441(b), and 1146, and removes

28

the above-entitled action to this Court from the Superior Court of the State of California in and for the County of San Bernardino.

1.  On August 1, 2022, Plaintiff ERICK MARTINEZ ("Plaintiff") filed a civil complaint against Defendant XPO Logistics Freight, Inc. in the Superior Court of the State of California in and for the County of San Bernardino entitled *Erick Martinez vs. XPO Logistics Freight, Inc.*, Case No. CIVSB2216503 which sets forth the following 11 causes of action: (1) disability discrimination; (2) failure to prevent discrimination in violation of California's Fair Employment and Housing Act ("FEHA"); (3) retaliation in violation of the FEHA; (4) failure to pay earned wages; (5) failure to pay minimum wages. (6) failure to pay overtime wages; (7) meal break violations; (8) rest break violations; (9) waiting time penalties; (10) failure to provide accurate itemized wage statements; and (11) wrongful termination in violation of public policy ("Complaint").  A true and complete copy of Plaintiff's Summons, Complaint and other related court documents received by Defendant XPO Logistics Freight, Inc. is attached as **Exhibit A** to the Declaration of Chad D. Bernard ("Bernard Decl.") filed concurrently with this Notice of Removal.  (Bernard Decl., ¶ 2.)

2.  On September 15, 2022, the Court filed a Notice of Trial Setting Conference and Notice of Case Assignment.  (Bernard Decl., ¶¶ 2-3, Exhibit A.)

3.  Defendant XPO Logistics Freight, Inc. first received Plaintiff's Summons and Complaint and related courts documents on October 7, 2022.  (Bernard Decl., ¶ 4; *See also* Exhibit A.)

4.  Plaintiff has not yet filed Proof of Service of Summons for service of the Summons, Complaint, and other related documents on XPO Logistics Freight, Inc. (Bernard Decl., ¶ 6.)

5.  On November 4, 2022, Defendant XPO Logistics Freight, Inc. filed and served its Answer in the San Bernardino County Superior Court.  A true and complete copy of Defendant XPO Logistics Freight, Inc.'s Answer is attached as **Exhibit B** to the Bernard Declaration.  (Bernard Decl., ¶ 5.)

6.  In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that

a copy of this Notice of Removal and all supporting papers promptly will be served on Plaintiff's counsel and filed with the Clerk of the San Bernardino Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 have been satisfied.

7. Prior to the filing of Defendant's Notice of Removal, defense counsel reviewed the San Bernardino County Superior Court's online docket regarding the above-captioned action. Based on defense counsel's review of the docket, and to the best of defense counsel's knowledge, the foregoing documents identified as Exhibits A through B constitute all of the process, pleadings, orders, and other documents received by Defendant and/or on filed in the state court action in San Bernardino County Superior Court. (Bernard Decl., ¶ 7.)

## STATEMENT OF JURISDICTION

8. The District Court has diversity jurisdiction under 28 U.S.C. section 1332(a) where the matter is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. As set forth below, both requirements are satisfied here. Therefore, this Court has subject matter jurisdiction over this case.

9. As set forth below, jurisdiction within the District Court is proper on the grounds herein described and the Action is timely and properly removed upon the filing of this Notice.

## THE REMOVAL IS TIMELY AND VENUE IS PROPER

10. This Notice of Removal has been filed within thirty (30) days after Defendant first received a copy of Plaintiff's Summons and Complaint upon which this action is based. This Notice of Removal is therefore filed within the time period provided by 28 U.S.C. § 1446(b).

11. In accordance with 28 U.S.C. section 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting documents promptly will be served on Plaintiff's counsel and filed with the Clerk of the San Bernardino County Superior Court. Therefore, all procedural requirements under 28 U.S.C. section 1446 will

be satisfied.

## VENUE IS PROPER

12. Venue properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1441(a), which expressly provides that the proper venue of a removed action is "the district court of the United States for the district and division embracing the place where such action is pending."

13. Venue of this action lies in the United States District Court for the Central District of California, Eastern Division pursuant to 28 U.S.C. §§ 1441, *et seq*. and 1391(a) because this is the judicial district of this Court in which the action arose, where Plaintiff resides and where the causes of action arose.

## DIVERSITY JURISDICTION

### Complete Diversity of Citizenship Exists

14. Defendant properly may remove the Complaint on the basis of diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332(a) or 28 U.S.C § 1332(d)(2), because complete diversity of citizenship exists.

15. Diversity jurisdiction exists where there is diversity of citizenship between the parties at the time the lawsuit is filed. *See Grupo Dataflux v. Atlas Global Group, LP*, 541 U.S. 567, 571 (2004).

16. Citizenship of the parties in this matter is determined by their citizenship status at the time of the lawsuit's commencement. *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

17. **Plaintiff is a California Resident.** Plaintiff was, at the time of filing of the Complaint, and still is, a citizen of the State of California within the meaning of 28 U.S.C. § 1332(a). (Complaint ¶ 1.) At all times during his employment with Defendant, Plaintiff lived in California. Additionally, Plaintiff's employee file provided that he resided in Rialto, California during his employment (Declaration of Pablo Eguez ("Eguez Decl.") ¶ 3), his last known address at the time of his termination was 11608 Ocala Ct., Moreno Valley, 92557, California. (Eguez Decl. ¶ 4.)

18. A corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c).

19. **Defendant XPO Logistics Freight, Inc. is a Citizen of Delaware and Michigan.** Defendant XPO Logistics Freight, Inc. was, at the time of filing of the Complaint, and still is, a citizen of the State of Delaware within the meaning of section 1332(c)(1), because it now is and was at all times incorporated under the laws of that state. Defendant XPO Logistics Freight, Inc. also was, at the time of filing of the Complaint, and still is, a citizen of the State of Michigan within the meaning of section 1332(c)(1). At all relevant times, XPO Logistics Freight, Inc.'s principal place of business and headquarters have been located in Michigan. (Declaration of Riina Tohvert, ¶ 2.) Further, XPO Logistics Freight, Inc.'s high-level management is located at its headquarters in Michigan. Accordingly, all of XPO Logistics, Inc.'s primary management functions are performed in the State of Michigan. (*Id.*) *See Hertz Corp. v. Friend* (2010) 559 U.S. 77, 130 S. Ct. 1181, 1186 (adopting the "nerve center test" for purposes of ascertaining a corporation's principal place of business' for purposes of diversity jurisdiction; "the phrase 'principal place of business refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities").

20. Applying the "nerve center" test, Michigan is the state where Defendant's primary executive, administrative, financial, and management functions are conducted, and where its high-level officers direct, control, and coordinate their activities – *i.e.*, the principal place of business of Defendant.

21. The presence of Doe defendants has no bearing on the diversity with respect to removal. See 28 U.S.C. § 1441(a) ("For purposes of removal under this Chapter, the citizenship of defendants used under a fictitious name shall be disregarded.").

**THE AMOUNT IN CONTROVERSY REQUIREMENT IS SATISFIED**

22. This Action also meets the amount in controversy requirement for removal based on diversity jurisdiction. 28 U.S.C. section 1332(a) authorizes the removal of cases in which there is diversity of citizenship between the parties and the matter in controversy

exceeds the sum or value of $75,000.00, exclusive of interest and costs. Without admitting that Plaintiff could recover any damages or penalties, Defendant asserts that the amount in controversy in this action could exceed $75,000, exclusive of interest and costs.

23. In determining whether the amount in controversy exceeds $75,000.00, the Court must presume Plaintiff will prevail on each and every one of his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002), citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes "plaintiff prevails on liability") and *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3rd Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by reasonable reading of the value of the rights being litigated"). Moreover, the argument and facts set forth herein appropriately may be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 840, n.1 (9th Cir. 2002), citing *Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969).

24. The amount in controversy may include general and special compensatory damages and attorneys' fees recoverable by statute. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367, cert denied, 459 U.S. 945 (9th Cir. 1982) (attorneys' fees may be taken into account to determine jurisdictional amount). The Court may examine the nature of the action and the relief sought, including attorneys' fees. *See, e.g., Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1035 (N.D. Cal. 2002) (attorneys' fees in individual employment discrimination cases often exceed damages). The Ninth Circuit has made clear that statutory attorneys' fees are included as a basis for determining the jurisdictional amount in controversy. *See Galt*, 142 F.3d at 1155-56. In determining whether the amount in controversy meets the jurisdictional minimum, attorneys' fees are calculable beyond the time of removal. *Simmons*, 209 F.Supp. at 1035.

25. Punitive damages also are included in calculating the amount in controversy. *See Davenport v. Mutual Ben. Health & Acc. Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963); see

also *Aucina v. Amoco Oil Co.*, 871 F.Supp. 332, 334 (S.D. Iowa 1994) (nothing that "the purpose of punitive damages is to capture a defendant's attention and deter others from similar conduct" and the plaintiff's prayer for punitive damages "might alone" exceed the jurisdictional minimum); *White v. FCI USA, Inc.*, 319 F.3d 672, 674-76 (5th Cir. 2003) (finding it facially apparent that plaintiff's wrongful termination claim exceeded $75,000 based on her "lengthy list of compensatory and punitive damages," including loss of pay, fringe benefits, impaired earning capacity, emotional distress damages, combined with a claim for attorneys' fees).

26. Defendant denies the validity and merit of all of Plaintiff's claims, the legal theories upon which they are purportedly based, and the claims for monetary and other relief that flow from them. However, for purposes of removal only, and without conceding that Plaintiff is entitled to any damages or penalties, Defendant has a good faith belief that the amount in controversy in this action could exceed $75,000.00. Where, as here, a plaintiff's state court complaint is silent as to the amount of damages claimed, the removing defendant need establish only that it is more probable than not that the plaintiff's claims exceed the jurisdictional minimum. *Guglielmino v. McKee Foods, Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Sanchez v. Monumental Life Ins. Co.*, 95 F.3d 856, 860-61 (9th Cir. 1996).

Here, the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, for the following reasons:

a. Plaintiff seeks to recover for alleged general and special damages, loss of earnings, statutory penalties for wage and hour violations, civil penalties, attorneys' fees, prejudgment interest, punitive and exemplary damages, and costs of suit. (*See* **Exhibit A** at Complaint ¶¶ 19- 22, 26-29, 33-36, 41-42, 53-54, 61-62, 69, 74-75, 81, 87, 90-92, Prayer for Relief ¶¶ 1-12.)

b. **Back and Front Pay Damages In Controversy Likely Exceed $75,000.** In the Action, Plaintiff alleges wrongful termination because Defendant "terminated Plaintiff on or around August 17, 2021 for pretextual reasons" (*See* **Exhibit**

**A**, Complaint at ¶ 11.) Although Plaintiff has not specified the amount he seeks in connection with his discrimination, retaliation, and wrongful termination claims, this allegation and these claims necessarily establish the amount in controversy. Plaintiff alleges that he began working for Defendant on or around September 2014 and was terminated on or about August 17, 2021. (*See* **Exhibit A**, Complaint at ¶¶ 7, 11.) Defendant's records indicate that Plaintiff's employment was indeed terminated on August 17, 2021 and was earning $ 32.18 per hour at the time of his termination. (Eguez Decl., ¶¶ 4-5.) Assuming this action were to proceed to trial on August 1, 2023 (a conservative estimate of one year from the date Plaintiff filed his Complaint), approximately 102 weeks will have passed since Plaintiff's August 17, 2021 termination.

   c. Prevailing plaintiffs in employment cases are generally entitled to past and future loss of earnings. *Villacorta v. Cemex Cement, Inc.*, 221 Cal. App. 4th 1425, 1432 (2013); se*e also Wysinger v. Automobile Club of Southern California*, 157 Cal. App. 4th 413, 427 (2007) ("Under FEHA, an employee . . . may be compensated for a future loss of earnings."). Both past and future loss of earnings are considered for purposes of calculating the amount of controversy, even though the amount of controversy is assessed at "the time of removal." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) ("…[T]here is no question that future wages are 'at stake' in the litigation, whatever the likelihood that [Plaintiff] will actually recover them."). California decisions from the Fair Employment Housing Commission provide for the recovery of future loss of earnings for one (1) or two (2) additional years. *Department of Fair Emp't & Housing v. Smitty's Coffee Shop, FEHC* (1984) Precedent Decision No. 84-25 (expressly adopting federal court view that front pay should be limited and recommending a "fixed period" such as one to two years).

   d. **Assuming Plaintiff could establish liability on his wrongful termination and discrimination claims and that this matter proceeds to trial on August 1, 2023, Plaintiff could seek to recover approximately $131,294.40 in lost**

**wages**, calculated as follows: $1,287.20 per week[1] x 102 weeks. **Plaintiff could also seek to recover $66,934.40 in front pay** assuming a one (1) year award of front pay to him.

  e.   **Emotional Distress Damages In Controversy Likely Exceed $75,000.** Additionally, Plaintiff's alleges entitlement to damages for "emotional distress, humiliation, mental anguish and embarrassment, as well as the manifestation of physical symptoms" alone, satisfies the amount in controversy requirement. (*See* **Exhibit A** at Complaint at ¶¶ 27, 34, 91, Prayer for Relief ¶ 1.) While Plaintiff has not quantified the value of these damages, they may be substantial. *Hurd v. Am. Income Life Ins*. 2013 U.S. Dist. LEXIS 147849, at *17 (C.D. Cal. Oct. 10, 2013) ("emotional distress damages in discrimination cases can be 'substantial' even when lost wages fall short of the jurisdictional minimum").

  f.   Indeed, plaintiffs alleging emotional distress as a result of wrongful termination regularly seek in excess of $75,000 in such damages. *Keiffer v. Bechtel Corp.*, 65 Cal.App.4th 893, 895 (1998) (California Court of Appeal upheld jury award in excess of $75,000.00 for emotional distress damages); *Silo v. CHW Medical Foundation*, 86 Cal.App.4th 947, 955 (2001) (jury award in excess of $75,000 in non-economic damages was upheld in wrongful termination lawsuit); *see also Egan v. Premier Scales & Sys.*, 237 F.Supp.2d 774, 776 (W.D. Ky. 2002) (where plaintiff sought damages for embarrassment, humiliation, and willful, malicious and outrageous conduct, the court held that the defendant could "easily make the case that the claims are more likely than not to reach the federal amount in controversy requirement").

  g.   **Further, Plaintiff's alleged entitlement to punitive damages also satisfies the jurisdictional requirement.** (*See* **Exhibit A** at Complaint at ¶¶ 29, 36, 92, Prayer for Relief ¶ 10.). California juries have returned verdicts with substantial punitive damage awards in employment discrimination actions. *Simmons*, 209 F. Supp. 2d at 1033 ("the jury verdicts in these cases amply demonstrate the potential for large punitive damage awards in employment discrimination cases"); *Aucina*, 871 F. Supp. at 334 ("[b]ecause the

---

[1] $32.18 per hour x 40 hours per week

9

NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441(a) AND (b) DIVERSITY

purpose of punitive damages is to capture the defendant's attention and deter others from similar conduct, it is apparent that the plaintiff's claim for punitive damages alone might exceed [the jurisdictional amount]"). In *Aucina*, the defendant-employer established the amount in controversy exceeded the jurisdictional minimum where the former employee asserted claims for lost wages, lost benefits, mental anguish, and punitive damages. The court noted that the defendant was a Fortune 500 Company and that "[b]ecause the purpose of punitive damages is to capture a defendant's attention and deter others from similar conduct," the plaintiff's claim for punitive damages "might alone" exceed the jurisdictional minimum. *Id*. at 334. Thus, although Defendant vigorously denies Plaintiff's allegations and claims, if Plaintiff were to prevail on his claims and establish the requisite state of mind, the potential punitive damages award alone against Defendant could well exceed the $75,000 jurisdictional minimum. Assuming conservatively that Plaintiff could recover punitive damages in a 1:1 ratio with two (2) years of alleged lost earnings, he would recover at least $113,984.00 in punitive damages.

      h.    In addition to the above amounts, Plaintiff also seeks penalties[2] pursuant to California Labor Code Section 210 during the applicable statute of limitations period on which Defendant allegedly failed to timely pay Plaintiff all wages owed to him. (*See* **Exhibit A**, Complaint at ¶¶ 37-42.) Although the Complaint does not specify the dollar amount of penalties being sought, Plaintiff may be entitled to recover statutory penalties of $100.00 for the initial pay period in which a violation of Section 204 occurred and $200.00 for each violation in a subsequent pay period, plus 25 percent of the amount unlawfully withheld. Given that Defendant paid its employees on a weekly basis (Eguez Decl., ¶ 5.), Plaintiff could seek to recover **$375.00** ($100 for alleged first violation + $200 for each subsequent violation x approximately 1 subsequent pay period in the applicable statute of limitations period of one year (July 31, 2021 – August 1, 2022)) + ($300 x .25

---

[2] *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1009 (N.D. Cal. 2002) (considering potential penalties a plaintiff was seeking in determining the amount in controversy); *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1168 (6th Cir. 1975) ("It is settled that the statutory penalty and a statutory attorney's fees can be considered in determining whether the jurisdictional amount is met.").

10
NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441(a) AND (b) DIVERSITY

(the amount allegedly unlawfully withheld assuming Plaintiff prevails on his claims for failure to pay overtime, rest break violations ($3,411.08) and meal period violations ($3,411.08)).

   i. Plaintiff also seeks to recover statutory penalties pursuant to Labor Code Section 226(a), based on Defendant's alleged failure to provide accurate itemized wage statements.  (*See* **Exhibit A**, Complaint at ¶¶ 82-87.)  If Plaintiff prevailed on this claim, he may also be entitled to recover statutory penalties of $50.00 for the initial pay period in which a violation of Section 226(a) occurred and $100.00 for each violation in a subsequent pay period, not to exceed an aggregate penalty of $4,000.00.  Given that Defendant paid its employees on a weekly basis (Eguez Decl., ¶ 5), Plaintiff could seek to recover **$150.00** ($50 for alleged first violation + ($100 for each subsequent violation x approximately 1 subsequent pay period in the applicable statute of limitations period of one year (July 31, 2021 – August 1, 2022))).

   j. Plaintiff also seeks meal period premium pay equal to one (1) hour of wages pursuant to Section 226.7 and the applicable Wage Orders for each day of work during the applicable statute of limitations period on which Defendant allegedly failed to provide him with the required meal periods.  (*See* **Exhibit A**, Complaint at ¶¶ 63-69.)  Plaintiff alleges "Plaintiff was not given compliant meal and rest periods.  Instead, Defendants required Plaintiff to frequently work through his meal and rest periods" and "Defendants also had no policy and/or practice to pay a premium when meal periods were missed and thus failed to pay Plaintiff the full meal premium due.  As such, Plaintiff did not receive compensation at the rate of one hour's pay for each day Plaintiff did not receive a meal period."  (**Exhibit A**, Complaint at ¶¶ 13, 66-67.)  If Plaintiff were to prevail on this claim, he could seek to recover **$3,411.08** in premium pay, calculated as follows: one (1) violation per week × $32.18/hour × 106 workweeks.  In other words, there is at least **$3,411.08** in controversy as to this claim.

   k. In the Action, Plaintiff also seeks rest break premiums equal to one (1) hour of wages pursuant to Labor Code Sections 226.7 and 512 for each day of work during

the applicable statute of limitations period on which Defendant allegedly failed to provide him with the required rest breaks. (*See* **Exhibit A**, Complaint at ¶¶ 70-75.) While Plaintiff's Complaint provides no indication as to the number of rest breaks Plaintiff claims he was not provided per week, he alleges that, throughout the applicable statute of limitations period, he "regularly work[ed] more than eight (8) hours in one day and/or more than forty (40) hours in one week" and "did not receive ten (10) minute rest periods for every four (4) hours of work or major fraction thereof, as mandated by the California Labor Code and the Industrial Welfare Commission. Furthermore, Plaintiff did not receive compensation at the rate of one hour's pay for each day Plaintiff were [sic] deprived of Plaintiff's rest period(s)." (*See* **Exhibit A**, Complaint at ¶¶ 12, 73.) As the calculation of premiums for rest period violations is the same as the calculation for meal period violations, the amount in controversy as to this claim is **$3,411.08**, calculated as follows and based upon one (1) rest break violation per week: one (1) violation per week × $32.18/hour × 106 workweeks.

   l. In the Action, Plaintiff also seeks to recover penalties pursuant to California Labor Code section 203 in the amount of 30 days' wages for Defendant's purported failure to pay all unpaid wages at termination. (*See* **Exhibit A**, Complaint at ¶¶ 38-41.) Although the Complaint does not specify the dollar amount of penalties being sought, if Plaintiff prevailed on this claim, he would seek to recover at least **$7,723.20** ($32.18/hour x 8 hours/day x 30 days).

   m. Plaintiff also seeks to recover statutory attorneys' fees pursuant to the FEHA and California Labor Code. (*See* **Exhibit A** at Complaint at ¶¶ 21, 28, 35, Prayer for Relief ¶ 8.) While Plaintiff seeks an unspecified amount of attorneys' fees, such fees may also be taken into account to determine jurisdictional amounts, if a statute authorizes fees to a successful litigant. *Goldberg v. C.P.C. International, Inc.,* 678 F.2d 1365, 1367 (9th Cir. 1982); *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155-1156 (9th Cir. 1998). *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) ("[w]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or

discretionary language, such fees may be included in the amount in controversy"); *Simmons v. PCR Tech.,* 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002). "Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy." *Brady v. Mercedes-Benz USA, Inc.* (N.D. Cal. 2002) 243 F. Supp 2d 1004, 1011; *Celestino v. Renal Advantage, Inc.* (N.D. Cal. 2007) 2007 U.S. Dist. LEXIS 33827, *11 ("the amount in controversy includes not only damages accrued up to the time of removal, but also a reasonable assessment of damages likely to be accrued after the time of removal"). At a conservative rate of $250 per hour, Plaintiff would reach the jurisdictional threshold of $75,000 after his counsel in this action expended 300 hours. *Tiffany v. O'Reilly Auto. Stores, Inc.*, No. CIVS-13-0926 LKK/KJN (2013), U.S. Dist. LEXIS 130082 (E.D. Cal. Sept. 10, 2013) (estimating future attorney's fees using rate of $250 per hour). Plaintiff's attorneys' fees alone in this matter will exceed $75,000 if the case proceeds to trial.

   n. Presuming, as it must for purposes of determining jurisdiction, that Plaintiff will prevail on each and every one of his claims asserted in the Complaint, the data set forth in Paragraphs 24(a) – (m), above, clearly establishes it is more probable than not that the amount in controversy exceeds $75,000.

  25. In sum, Plaintiff's potential recovery under the facts as alleged in his Complaint exceeds the amount in controversy. It cannot be said to a legal certainty that Plaintiff would not be entitled to recover the jurisdictional amount. *See Anthony v. Security Pacific Financial Services, Inc.*, 75 F.3d 311, 315 (7th Cir. 1996); *Watson v. Blankenship*, 20 F.3d 383, 386-87 (10th Cir. 1994). Therefore, the claims alleged and recovery requested in Plaintiff's Complaint demonstrate the amount in controversy in this case exceeds the requirements under 28 U.S.C. §1332(a).

/ / /

/ / /

/ / /

WHEREFORE, Defendant removes the above-entitled action now pending in the Superior Court of the State of California for the County of San Bernardino to this Court.

Dated: November 7, 2022

Respectfully submitted,

JACKSON LEWIS P.C.

By  */s/ Chad D. Bernard*
    Chad D. Bernard
    Danielle C. Cepeda

    Attorneys for Defendant
    XPO LOGISTICS FREIGHT, INC.